**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    No.  CR-04-2032 MV

JORGE ALBERTO MARTINEZ,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss the Indictment as a Violation of the Defendant's Right to Due Process Under the Fifth Amendment to the United States Constitution **[Doc. No. 24]**, filed November 24, 2004. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**.

## BACKGROUND

Defendant, who is 19 years old, is charged under 18 U.S.C. §1111(a) with first degree murder.  Specifically, Defendant is alleged to have abused his 3-month old daughter which resulted in her death.  The one-count Indictment charges as follows:

> On or about the 3rd day of July, 2004, within the territorial jurisdiction of Kirtland Air Force Base, in the State and District of New Mexico, the defendant, JORGE ALBERTO MARTINEZ, did unlawfully kill Jane Doe, a three month old baby, with malice aforethought by perpetrating child abuse by striking Jane Doe, wherein the Defendant intentionally and knowingly caused the serious bodily injury and death to Jane Doe.

In 2003, under the PROTECT Act, Congress amended 18 U.S.C. §1111 to include child abuse as an enumerated predicate felony to support a first degree murder charge.  As amended, the current version of 18 U.S.C. §1111(a)  provides as follows:

(a) Murder is the unlawful killing of a human being with malice aforethought.  Every murder . . . committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; . . . or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

For purposes of §1111(a), the term "child abuse" is defined as "intentionally or knowingly causing death or serious bodily injury to a child." 18 U.S.C. §1111(c)(3).  The term "child" is defined as "a person who has not attained the age of 18 years old and is (A) under the perpetrator's care or control; or (B) at least six years younger than the perpetrator." 18 U.S.C. §111(c)(2).

## DISCUSSION

### A.  The Felony Murder Rule & 18 U.S.C. §1111(a)

18 U.S.C. §1111(a) incorporates the felony murder rule.  *See United States v. Nichols*, 169 F.3d 1255, 1272 (10th Cir.), *cert. denied*, 528 U.S. 934 (1999).  "The felony-murder rule provides that an unintended death resulting from the commission or attempted commission of certain felonies is murder in the first degree.  The doctrine circumvents the normal *mens rea* requirements of first-degree murder and requires only an intent to commit the underlying felony." *Id.*  Accordingly, the felony murder rule "eliminates the need for a finding of premeditation." *Id.*  The Tenth Circuit has noted:

> There is an intended felony and an unintended homicide.  The malice which plays a part in the commission of the felony is transferred by the law to the homicide.  As a result of the fictional transfer, the homicide is deemed committed with malice; and a homicide with malice is, by definition, common-law murder.

*United States v. Pearson*, 159 F.3d 480, 485 (10th Cir. 1998).  While the wisdom of the felony murder rule has been questioned, "'courts and commentators generally agree that the rule was conceived to deter the commission of certain dangerous felonies.  The felony-murder rule not only

deters felons from killing during crime, but also deters potential felons from committing the predicate offense in the first place.'" *Nichols*, 169 F.3d at 1274 (citation omitted).

As amended by the PROTECT Act, the felony murder portion of §1111(a) provides that an unanticipated death resulting from the commission or attempted commission of child abuse is murder in the first degree. Accordingly, under the current version of §1111(a), the prosecution may obtain a first degree murder conviction by establishing that Defendant committed child abuse by intentionally or knowingly causing death or serious bodily injury to a child and that a death resulted from that child abuse.

Defendant states that the legislative history of the PROTECT Act does not refer to the amendment making child abuse a predicate felony for first degree murder. According to Defendant, the amendment "works a revolutionary change in the definition of first degree murder . . . without any guidance as to the congressional intent with regard to the statute's interpretation." The government, however, provides the following quotation from the House Conference Report:

> Section 1111 is the federal murder statute. Under current law, first degree murder includes murder committed in the perpetration of, or attempt to perpetrate, certain crimes including arson, escape, kidnapping, sexual abuse, and several other crimes. "Child abuse" and "torture" would be added to the list for first degree murder. Acts of child abuse with lethal consequences are as deserving of such treatment as killings occurring in the course of such offenses as burglary or robbery. Since first degree murder is punishable by death or life imprisonment, these changes will help ensure that child abusers who kill their victims will receive penalties that reflect the heinousness of their crimes.

H.R. Rep. No. 108-66, Sec. 102 (Apr. 9, 2003). In addition, the government cites Congressman Tom DeLay as stating that "[t]his bill will add child abuse and child torture to the legal predicate for first degree murder." Accordingly, the government states, there is "no question that Congress intended to include 'child abuse' as a predicate felony to the list of predicate felonies contained in Section 1111

and to punish such defendants to the same degree as other first degree murders." Govt.'s Response
at 3.

Defendant argues that §1111(a), as amended by the PROTECT Act to include child abuse as
a predicate felony to first degree murder, violates his due process rights.  There are two bases for
Defendant's argument: (1) child abuse is not a felony independent of the cause of death and thus
cannot be used as a predicate felony for felony murder; and (2) allowing child abuse to serve as a
predicate for murder impermissibly relieves the government from proving either premeditation or an
underlying felony.  The two bases for Defendant's argument are addressed herein.

**B.      Merger**

Defendant first argues that due process requires the underlying felony in a felony murder
charge to be based upon acts independent and separate from the act that actually causes death.
According to Defendant, the inclusion of child abuse as a predicate felony in §1111(a) violates due
process because the act constituting the child abuse upon which the felony murder charge is based
is the same act which caused the child's death.  According to Defendant, under the felony murder
doctrine, the homicide cannot be intentional, only the predicate felony can be intentional.  Here,
Defendant argues, charging first degree murder on the basis of a killing that arose from intentionally
or knowingly causing death to a child is impermissible "bootstrapping."

The principle to which Defendant is referring is known as the merger doctrine.  The merger
doctrine:

> was developed . . . as a shorthand explanation for the conclusion that the felony-
> murder rule should not be applied in circumstances where the only underlying (or
> "predicate") felony committed by the defendant was *assault*.  The name of the
> doctrine derived from the characterization of the assault as an offense that "merged"
> with the resulting homicide.

*State v. Godsey*, 60 S.W.3d 759, 774 (Tenn. 2001) (citing *People v. Hansen*, 885 P.2d 1022, 1028 (Cal. 1994)). More generally, "the merger doctrine bars the use of the felony murder rule when the underlying felony directly results in, or is an integral part of, the homicide." *Godsey*, 60 S.W.3d at 774 (citation omitted).

There is "no settled standard as to the 'merger doctrine' in felony murder cases. Some courts reject the concept, some apply it but in different circumstances." *Tillman v. Cook*, 25 F. Supp.2d 1245, 1297 (D. Utah 1998), *aff'd*, 215 F.3d 1116 (10th Cir. 2000). "A state by state analysis shows various positions and different policies. There is no fully accepted concept of the merger doctrine and therefore no settled law." *Id.* at 1296.

It is clear, however, that "[c]ourts have generally declined to hold that the merger doctrine implicates any principle of constitutional law." *Godsey*, 60 S.W.3d at 774. *See, e.g., Rhode v. Olk-Long*, 84 F.3d 284, 289 (8th Cir.) (rejecting defendant's due process challenge to her conviction of felony murder based on child endangerment because the argument lacked a constitutional basis, depending instead on the merger doctrine), *cert. denied*, 519 U.S. 892 (1996); *State v. Lopez*, 847 P.2d 1078, 1089 (Ariz. 1992) (observing that the court could conceive of no constitutional impediment "precluding the legislature from classifying child abuse that results in the death of the child as a predicate felony that triggers the felony-murder statute."), *cert. denied*, 510 U.S. 894 (1993); *Mapps v. State*, 520 So.2d 92, 93-99 (Fla. Dist. Ct. App. 1988) (rejecting defendant's argument that a felony murder statute that included aggravated child abuse as a predicate offense was unconstitutional); *State v. Tremblay*, 479 P.2d 507, 511 (Or. Ct. App. 1971) (observing that merger doctrine does not implicate any principle of constitutional law). Rather, "courts have viewed the merger doctrine as a principle for discerning legislative intent and, more specifically, as a principle

that preserves 'some meaningful domain in which the Legislature's careful graduation of homicide offenses can be implemented.'" *Godsey*, 60 S.W.3d at 774 (citing *Hansen*, 885 F.3d at 1028); *see also State v. Thompson*, 558 P.2d 202, 205 (Wash. 1977) (holding that decision whether to apply merger rule where predicate felony in a felony murder is an assault and inherent in the homicide is a matter of statutory interpretation rather than question of constitutional rights); *Tremblay*, 479 P.2d at 511 (stating that the court would be "invading the legislature's function" if it extended the merger doctrine to underlying felonies specifically enumerated in the state statute as bases for a felony first degree murder count) .

For example, in *Tillman*, the petitioner argued that the Utah first degree murder statute was unconstitutional as applied because Utah had not adopted a merger doctrine.  The information on which the defendant had been prosecuted alleged that a homicide was committed while he was "engaged in the commission of burglary, aggravated burglary, arson or aggravated arson."  After his state murder conviction and death sentence were affirmed and denial of his state habeas petition was affirmed, the petitioner sought habeas corpus relief in federal district court.  The district court explained that the petitioner bore the burden of showing that "his contention [was] 'so rooted in the traditions and conscience of our people as to be ranked fundamental.'" *Tillman*, 25 F. Supp.2d at 1297 (citing *Patterson v. New York*, 432 U.S. 197 (1977)).  Applying this standard, the court found that "[t]he merger doctrine has no firm recognition in the history of American law and is contrary to early English and American law." *Id.* at 1298.  Accordingly, the court held that "[t]he petitioner has not shown that the merger rule is fundamental and therefore cannot claim its benefits as a matter of substantive due process law." *Id.*  Finally, the court noted that its conclusion comports with the position of other federal courts. *See, e.g., Ragland v. Hundley*, 79 F.3d 702 (8th Cir.) (finding that

Iowa's specific inclusion of felonious assault as a basis for felony murder and its explicit refusal to expand the merger doctrine to encompass felony murder do not violate due process), *cert. denied*, 519 U.S. 850 (1996); *Heaton v. Nix*, 924 F.2d 130, 134 (8th Cir.) (finding that defendant's argument that second degree murder cannot be enhanced by participating in an act which is also an element of murder "simply lacks a constitutional basis."), *cert. denied*, 500 U.S. 956 (1991); *Roman v. Blodgett*, 1993 WL 151282, **1 (9th Cir. May 11, 1993) (holding that Washington Supreme Court's express refusal to adopt rule merging an assault into murder for purposes of a felony murder charge did not violate due process).

A distinguishing factor in the courts' determination of whether to apply the merger doctrine is whether the felony murder statute at issue specifically enumerates the felonies that can serve as predicate offenses for a first degree murder charge. The merger doctrine has been applied "largely in those states where the felony murder statute fails to specifically list the felonies capable of supporting a felony murder conviction." *Godsey*, 60 S.W.3d at 775.[1]  On the other hand, if the "legislature explicitly states that a particular felony is a predicate felony for felony-murder, no 'merger' occurs." *Id.* (quoting *Lopez*, 847 P.2d at 1089).

---

[1]*See, e.g., Barnett v. State*, 2000 WL 218166, at *2 (Ala. Crim. App. Feb. 25, 2000) (applying merger doctrine in context of first degree felony murder statute that authorized a conviction when the offender caused the death of a person during the commission of certain enumerated felonies and "any other felony clearly dangerous to human life"); *Hansen*, 885 P.2d at 102-26 (applying merger doctrine in context of second degree felony murder statute authorizing a conviction for a killing committed during the perpetration of "a felony"); *State v. Campos*, 921 P.2d 1266, 1270-72 (N.M. 1996) (applying merger doctrine in context of second degree felony murder statute that did not enumerate possible predicate felonies).

For example, in *Godsey*, the defendant argued that a 1995 amendment to Tennessee's first degree murder statute violated due process under the state and federal constitutions. The statute under which the defendant was prosecuted provided in relevant part:

> (a) First degree murder is . . . (2) A killing of another committed in the perpetration of or attempt to perpetrate . . . aggravated child abuse . . . (b) No culpable mental state is required for conviction under subdivision (a)(2) . . . except the intent to commit the enumerated offenses or acts in such subdivisions.

Prior to the 1995 amendment, aggravated child abuse was not one of the enumerated felonies capable of supporting a charge of first degree felony murder. The defendant argued that the amendment violated due process because the acts constituting the aggravated child abuse upon which the felony murder conviction was based were the same acts that caused the victim's death. The Supreme Court of Tennessee disagreed, finding that "the merger doctrine is a rule of statutory construction, not a principle of constitutional law, and that the rule applies only when the legislature has not enumerated the felonies that will support a conviction for felony murder." *Id.* at 774. The court further found:

> [T]he General Assembly has expressed an unmistakable intent to have aggravated child abuse qualify as a felony capable of supporting a conviction of first degree felony murder. Under such circumstances, the merger doctrine should not be applied to preclude a conviction for first degree felony murder, even though death is the consequence of an aggravated child abuse. The defendant's assertion that the merger doctrine bars his conviction for felony murder is without merit.

*Id.* at 775.

The case law, which includes federal case law, is clear that a state's determination not to adopt the merger doctrine in the context of statutes virtually identical to the one at issue here does not implicate due process or any other constitutional right but rather is an issue of statutory construction. There is no logical distinction to be drawn between application of a due process analysis to a state and a federal murder statute. A defendant being charged under a state felony

murder statute has the same due process rights as does a defendant being charged under a federal felony murder statute.  State and federal courts uniformly have held that a state legislature's decision to specifically enumerate certain offenses, including child abuse, as predicate offenses to first degree murder does not implicate due process.  The federal legislature necessarily has the same latitude to enumerate specific offenses that support a federal felony murder charge.

The statute at issue is similar to the statute addressed in *Godsey*.  Other than the fact that the statute at issue here is a federal rather than a state statute, there appears to be no distinction between that case and the instant case.  As did the Tennessee General Assembly in *Godsey*, Congress "has expressed an unmistakable intent to have . . . child abuse qualify as a felony capable of supporting a conviction of first degree felony murder."  *Id*.  Applying *Godsey*, it appears that, "under such circumstances, the merger doctrine should not be applied to preclude a conviction for first degree felony murder, even though death is the consequence of [the] child abuse."  *Id*.

Defendant suggests that this Court look to the New Mexico merger rule, referred to as the collateral felony rule, and, based on that rule, find that the failure to merge the offense of child abuse into the murder is improper.  New Mexico's felony murder statute provides:  "Murder in the first degree is the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused . . . in the commission of or attempt to commit any felony."  NMSA 1978, §30-2-1(A)(2) (1994).  Unlike the federal murder statute, the New Mexico statute does not specifically list the felonies capable of supporting a felony murder conviction.

"While the wording of [the] statute is broad," New Mexico has created "a series of limitations to the felony murder doctrine."  *State v. O'Kelly*, 135 N.M. 40, 45 (Ct. App. N.M. 2003), *cert. denied*, 135 N.M. 161 (2004).  There are five such limitations including the "collateral-felony"

limitation, which "dictates that the predicate felony may not be a lesser included offense of second degree murder." *Id.* Defendant argues that the collateral felony rule would prevent child abuse from serving as a predicate offense to felony murder. Under this rule, "courts apply a 'strict elements test' that finds an offense to be a lesser-included offense 'only if the statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible ever to commit the greater offense without also committing the lesser offense.'" *Id.* (citation omitted).

The elements of second degree murder under the New Mexico statute are: (1) the defendant killed another human being without lawful justification; and (2) the defendant knew that his acts created a strong probability of death or great bodily harm to another human being. *See* NMSA 1978, §30-2-1(B) (1994). The elements of child abuse under the New Mexico statute are: (1) the defendant knowingly, intentionally or negligently, and without justification abused a child by: (a) placing the child in a situation that might endanger his/her life or health; (b) torturing, cruelly confining or cruelly punishing the child, or (c) exposing the child to the inclemency of weather; and (2) the child was less than 18 years of age. The statutory elements of child abuse are not a sub-set of the statutory elements of second degree murder, *i.e.*, child abuse requires that the victim be under the age of 18 and involves either endangering, torturing, confining or punishing the child. It is possible to commit second degree murder without committing any of these enumerated acts and without a victim under the age of 18. Indeed, the New Mexico Court of Appeals has held that the elements of child abuse are not subsumed within the elements of second degree murder. *See State v. Mann*, 129 N.M. 600, 606 (Ct. App. N.M.), *cert. denied*, 129 N.M. 599 (2000). Moreover, in *State v. Mora*, 124 N.M. 346 (1997), the New Mexico Supreme Court affirmed the defendant's conviction for felony murder where intentional

child abuse was the predicate felony.  *See id.* at 361.  Accordingly, Defendant is incorrect that New

Mexico's collateral felony rule would preclude the government from charging him with felony murder

using child abuse as the predicate felony.[2]

## C.     Improper Presumptions and Burden Shifting

Defendant's second argument is that the inclusion of child abuse as a predicate offense in

§1111(a) violates due process because it allows the government to obtain a first degree murder

conviction without proving either premeditation or an underlying felony.  According to Defendant,

the statute improperly reduces the government's burden to proving only that the defendant

intentionally or knowingly caused the death of a child who is under the age of 18.

Defendant bases his due process argument on a line of Supreme Court cases beginning with

*In Re Winship*, 397 U.S. 358 (1970).  In *In Re Winship*, the Supreme Court declared "that the Due

Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt

of every fact necessary to constitute the crime with which he is charged."  *Id.* at 364.  Thereafter, in

*Mullaney v. Wilbur*, 421 U.S. 684 (1975), the defendant was charged with murder, which under

Maine law required proof not only of intent but of malice.  The trial court charged the jury that

"'malice aforethought is an essential and indispensable element of the crime of murder.'"  *Id.* at 686.

The trial court, however, also instructed that if the prosecution established that the homicide was both

intentional and unlawful, malice aforethought was to be implied unless the defendant proved by a fair

preponderance of the evidence that he acted in the heat of passion on sudden provocation.  The

_____

[2]  Even if Defendant were correct about the impropriety of using child abuse as a predicate
felony for felony murder under New Mexico law, the Court is not convinced that this conclusion
would have any bearing on the instant case.  Defendant has not provided any persuasive authority that
this Court is constitutionally required to adopt New Mexico's merger/collateral felony rule.

Supreme Court "unanimously agreed with the Court of Appeals that Wilbur's due process rights had been invaded by the presumption casting upon him the burden of proving by a preponderance of the evidence that he had acted in the heat of passion upon sudden provocation." *Patterson v. New York*, 432 U.S. 197, 214 (1977). In *Patterson*, the Supreme Court reaffirmed that "a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." *Id.* at 215. The *Patterson* Court explained that "[s]uch shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." *Id.* Finally, in *Sandstrom v. Montana*, 442 U.S. 510 (1979), the Supreme Court held that, in a case in which intent is an element of the crime charged, the jury instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts," violates the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt." *See id.* at 512. The Supreme Court explained that the jury may have interpreted the instruction as constituting either a burden-shifting presumption or a conclusive presumption, and that "either interpretation would have deprived defendant of his right to the due process of law." *Id.* at 524.

Courts consistently have refused to apply this line of cases to find that felony murder statutes, which do not require the government to prove premeditation or intent to kill, violate due process. For example, in *People v. Benson*, 480 N.Y.S.2d 811 (N.Y. Sup. Ct. Kings Co. 1984), the defendant argued that the New York felony murder statute was unconstitutional because it presumes intent from the commission of the underlying felony in violation of *Mullaney* and *Sandstrom*. The court explained that, in felony murder, the underlying felony "functions as replacement for the *mens rea* or

intent necessary for common law murder." *Id.* at 814.  The court cited several cases finding that such a "presumption" is not unconstitutional, and explained that "[t]he rationale of these decisions is that since intent is not an element of the crime in reality there is no presumption of intent."  *Id.*

Similarly, in *State v. Burkhart*, 103 P.3d 1037 (Mont. 2004), the defendant asserted that his due process rights were abridged because the state was relieved from having to prove a specific mental state for homicide.  The defendant maintained that the charge for felony-murder, with no predicate offense but the assault with a weapon, eliminated the state's burden of proving he purposely or knowingly caused the victim's death.  The defendant argued that all homicide charges require a showing of the necessary mental state while felony murder only requires a showing of intent to do the underlying felony.  The court rejected the defendant's arguments. First, the court explained that "'[w]hen a defendant commits a felony such as burglary, kidnapping or aggravated assault, he initiates conduct which creates a dangerous circumstance.  Therefore the intent to commit the felony supplies the intent for all the consequences, including homicide, arising therefrom.'"  *Id.* at 1046 (citation omitted).  Next, the court explained that "'[i]ntent [to kill] as such is not an element under the felony murder rule.'"  *Id.* at 1047 (citation omitted).  Accordingly, the court found that *Sandstrom* was inapposite:

> [W]e are not considering a conclusive presumption of *mens rea*.  A jury has not been instructed to presume an element of the crime from some other facts, nor has the state been relieved of its burden to prove a statutory element.  Rather, "the state may substitute proof of the mental state necessary to commit a homicide with proof of the mental state required to commit the underlying felony."

*Id.* (citation omitted).

In addition, in *Hicks v. Callahan*, 859 F.2d 1054 (1st Cir. 1988), *cert. denied*, 489 U.S. 1069 (1989), the court rejected the defendant's argument that the felony murder rule violated due process

-13-

requirements because it relieved the state of its burden of proving an essential element of the crime of murder, malice aforethought.  The court explained:

> The Commonwealth is not, pursuant to the operation of the felony-murder rule, 'relieved' of its duty prescribed by the United States Supreme Court in *In re Winship* of proving every fact necessary to the crime as charged beyond a reasonable doubt. Nor is the burden of proof as to an element of the crime charged "affirmatively shifted" from the Commonwealth to the defendant as prohibited by the Supreme Court in *Mullaney*.

*Id.* at 1057 (citation omitted).  Rather, the court explained, the government must prove the elements of malice aforethought essential to the predicate felony and, once this *mens rea* has been established, it is constructively applied to the homicide.

Courts thus appear to interpret *In Re Winship*, *Mullaney*, *Patterson* and *Sandstrom* to stand for the proposition that due process requires that all existing elements of an offense be proven beyond a reasonable doubt but does not require that any particular elements be present.  *See Northrop v. Alexander*, 642 F. Supp. 324 (N.D. Cal. 1986).  Indeed, in *Schad v. Arizona*, 501 U.S. 624 (1991), in the context of discussing jury instructions under a felony murder statute, the Supreme Court stated: "this Court consistently has given deference to the State's definition of a crime."  *Id.* at 657. Accordingly, the fact that felony murder does not require an element of premeditation does not implicate the due process concerns addressed in these cases.  *See People v. Johnson*, 284 Cal. Rptr. 579, 595 (Ct. App. Cal. 1991) (holding that felony murder statute "does not effect an unconstitutional 'conclusive presumption' of an element of the crime" because malice is not an element of felony murder), *cert. denied*, 503 U.S. 963 (1992); *State v. Lankford*, 781 P.2d 197, 217 (Idaho 1989) ("No jurisdiction has held that a felony murder statute violates the rule of *Sandstrom v. Montana*."), *cert. denied*, 497 U.S. 1032 (1990).

Thus, to the extent that the PROTECT Act amendment merely adds child abuse as an additional predicate felony to support felony murder under the federal murder statute, this amendment does not violate due process. This is true because, as with felony murder based on any of the other predicate felonies set forth in the statute, premeditation is not an element of the crime. Due process would be satisfied so long as the government is required to prove all of the elements of the underlying felony of child abuse, including the *mens rea* of that offense.

Defendant, however, argues that, under the amended statute, the government need not prove either premeditation *or an underlying felony*. The sole basis that Defendant offers for this argument is that, unlike the other predicate felonies enumerated in the statute, child abuse is not defined and punished in a separate section of the federal statute and, for this reason, cannot serve as a predicate felony for first degree murder. Defendant's argument continues that, because child abuse is not a proper predicate felony, with only child abuse as the predicate offense, his due process rights would be violated by a conviction under the murder statute unless there is proof beyond a reasonable doubt of premeditation.

The Court's review of the relevant case law has not revealed any support for the proposition that the absence of an independent federal statute defining and punishing certain offense conduct precludes the use of that offense conduct as a predicate to federal felony murder. Several courts have addressed this issue in the context of interpreting the felony murder statute where the underlying felony is burglary of a private residence. There is no independent federal statute defining and punishing burglary of a private residence. Rather than finding that, as a result, burglary is not a proper predicate for federal felony murder, courts consistently have looked to the definition of burglary set forth in the relevant state statute.

-15-

For example, in *United States v. Scheetz*, 293 F.3d 175 (4th Cir.), *cert. denied*, 537 U.S. 963

(2002), in sentencing the defendants on a count of conspiracy to distribute and to possess with intent

to distribute drugs, the district court applied U.S.S.G. §2D1.1(d)(1), which directs the court to apply

U.S.S.G. §2A1.1, the first-degree murder guideline, in sentencing a defendant for a drug offense "if

the victim was killed under circumstances that would constitute murder under 18 U.S.C. §1111 had

such killing taken place within the territorial or maritime jurisdiction of the United States."   The

defendants contended that the district court erred when it applied §2D1.1(d)(1) because the killing

of the victim was not a murder as defined in §1111.   The Fourth Circuit found this argument to be

without merit.   The Fourth Circuit explained:   "Because 18 U.S.C. §1111 covers crimes committed

within the territorial jurisdiction of the United States and because there is no federal burglary statute,

18 U.S.C. §13 assimilates the North Carolina state law of burglary."   *Id.* at 187.   The Fourth Circuit

then explained that, under North Carolina law, a burglary is defined as "the breaking and entering into

an occupied dwelling in the nighttime with the intent to commit a felony therein."   *Id.*   In the case

before it, the defendants' forced entry at night into the residence occupied by the victim constituted

a burglary under North Carolina state law because they broke into the occupied residence at night

with the intent to commit felonies therein, namely assault and robbery.   The court held:   "Because the

killing of Locklear was committed during the perpetration of a burglary, had the killing taken place

within the territorial or maritime jurisdiction of the United States, it would have constituted a murder

under 18 U.S.C. §1111."   *Id.*

Similarly, in *United States v. Narcia*, 776 F. Supp. 491 (D. Ariz. 1991), the defendants were

charged with two counts of felony murder with burglary and attempted robbery as the predicate

offenses.   The defendants noted that both felony murder charges were defined by reference to state

law in the indictment.  The defendants argued that because murder and the predicate offenses under federal felony murder are defined by federal law, state law definitions could not be applied.  In response, the government argued that because neither burglary nor attempted robbery is defined by federal law, the court must use the state law definitions of felony murder when the underlying offense is burglary or robbery.  First, the district court noted that "[t]here is no federal definition of burglary of a private residence."  *Id.* at 495.  Rather than find that, as a result, a federal felony murder charge could not be based on a predicate felony of burglary, the court held:  "Because the type of burglary of which the defendants are accused is not defined and punished by federal law, the offense must be defined and punished in accordance with state law."  *Id.*  Accordingly, the court held that the burglary component of the first felony murder count would be defined by state law.  Similarly, the court explained that while robbery is defined in 18 U.S.C. §2111, attempt is not defined by federal law and thus lacks a federal definition.  Accordingly, the court held that the attempted robbery component of the second felony murder count would be defined with reference to the federal definition of robbery and the state law definition of attempt.

Moreover, in *United States v. Loonsfoot*, 905 F.2d 116 (6th Cir. 1990), the defendant was convicted of first degree murder under 18 U.S.C. §1111 on the basis that he had killed four victims during a burglary.  In addressing Defendant's argument that the predicate offense of burglary should have merged into the felony murder, the Sixth Circuit set forth the definition of burglary under Michigan law.  Although the Sixth Circuit did not explicitly state why it was applying Michigan's definition of burglary, the inference is that it did so because there is no federal statute defining and punishing burglary.  Accordingly, the Sixth Circuit looked to state law for the definition of the elements of the offense.

Defendant acknowledges this case law but nonetheless argues that the Tenth Circuit's decision in *United States v. Bedonie*, 913 F.2d 782 (10th Cir. 1990), *cert. denied*, 501 U.S. 1253 (1991), suggests a contrary conclusion. The Court disagrees.  In *Bedonie*, the defendants appealed their convictions on the ground that the trial court lacked jurisdiction to try them for first degree murder committed in the perpetration of arson.  The defendants did not raise any due process claims.  The federal murder statute, 18 U.S.C. §1111, includes "any arson" as a predicate felony for felony murder.  The jury instructions set forth in part the language of §1111, as follows:  "Murder is the unlawful killing of a human being with malice aforethought.  Every murder perpetrated by . . . premeditated killing; or committed in the perpetration of . . . any arson . . . is murder in the first degree."  913 F.2d at 787.  The trial court specifically instructed the jury as to the elements of both premeditated murder and arson-murder.  Using the language of the Utah Code, the court instructed: "'[a] person is guilty of arson if . . . by means of fire or explosives, he unlawfully and intentionally damages the property of another.'"  *Id.* at 788 (citation omitted).

The defendants asserted that, in establishing arson-murder under §1111(a), "'[t]he only arson which is jurisdictionally proper for "Indian country" is 18 U.S.C. §81,' and '[b]y its own terms, [§81] does not apply to setting fire to motor vehicles.'"  *Id.* (citation omitted).  18 U.S.C. §81 provides:

> Whoever, within the special maritime and territorial jurisdiction of the United States, willfully and maliciously sets fire to or burns, . . . any building, structure or vessel, any machinery or building materials or supplies, military or naval stores, munitions of war, or any structural aids or appliances for navigation or shipping, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

The Tenth Circuit agreed with the defendants that "§81 is the only proper arson statute under which an Indian may be prosecuted for arson-murder under 18 U.S.C. §§1111(a) and 1153."  *Id.* Moreover, the Tenth Circuit disagreed with the government's position "that the 'any arson' language

of §1111(a) 'does not limit arson to the arson contemplated by either 18 U.S.C. §1153 or 18 U.S.C. §81.'" *Id.* The Tenth Circuit stated:

> we find it extremely significant that §1111(a) enumerates eleven separate crimes within its "felony-murder" provision, every one of which is defined and punishable under a separate section of Title 18 of the United States Code. As such, we consider it highly unlikely that Congress intended, through the insertion of the word "any" in §1111(a), to allow the federal definitions of the predicate crimes for felony-murder to be ignored in favor of definitions supplied by state and local statutes.

*Id.*

The Tenth Circuit explained that, "[t]aken to its logical limits, the government's argument would allow a defendant charged with arson-murder under §1111(a) to be charged and convicted under the provisions of any arson statute – federal, state or local – in the United States. Presumably, the government would be free to select the statute with the definition most favorable to prosecution." *Id.* The Tenth Circuit found that "[s]uch a construction of §1111(a), when Congress has supplied federal definitions for each of the predicate crimes, would be patently absurd." *Id.* at 789. The Tenth Circuit thus held that "in prosecuting a defendant for first degree murder under the 'felony-murder' provision of §1111(a), the predicate crime shall be defined by reference to the appropriate federal statute – in this case, the federal arson statute, 18 U.S.C. §81." *Id.*

Although the Tenth Circuit agreed with the defendants that §81 provides the appropriate definition of arson for the arson-murder provision of §1111, it disagreed with the defendants' contention that federal jurisdiction fails because §81 does not criminalize the burning of a motor vehicle. Section 81 defines arson to include the willful and malicious burning of "any machinery." Although "machinery" is not defined by the statute, the Tenth Circuit found that "the plain and ordinary language of §81 criminalizes the burning of a motor vehicle." *Id.* First, the Tenth Circuit

explained that, under a plain reading of §81, it could "not agree that the many terms surrounding the term 'machinery' somehow restrict the meaning of 'machinery' so as to exclude a motor vehicle from its definition."  *Id.* at 790.   Second, the Tenth Circuit explained that, "in order to meet the constitutional requirement of definiteness in a criminal statute, the statute must 'give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.'"  *Id.*  The Tenth Circuit, "[h]aving concluded . . . that the 'plain and ordinary meaning of §81 criminalizes the burning of a motor vehicle,' . . . likewise conclude[d] that the statute's terms provide sufficient notice that the burning of or setting fire to a motor vehicle is forbidden by §81."  *Id.*  Accordingly, the Tenth Circuit held that the district court had jurisdiction under §1153, 1111(a) and §81 to hear the prosecution of the defendants under a theory of arson-murder.  *See id.*

Defendant specifically relies on the following language in *Bedonie*:  "§1111(a) enumerates eleven separate crimes within its 'felony-murder' provision, *every one of which is defined and punishable under a separate section of Title 18 of the United States Code.*"  *Id.* at 788 (emphasis added).   The Tenth Circuit in *Bedonie* provided a footnote in support of this statement, which lists the statutory provisions for arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse and burglary and robbery.  *See id.* at 788 n.5.  For burglary and robbery, the Tenth Circuit cited 18 U.S.C. §§2111-2118.  *See id.*

The statutes set forth at §§2111-2118, however, do not include any provisions defining or punishing burglary *of a private residence*.  Moreover, these provisions do not appear broad enough to cover the facts of burglary of a private residence.  It thus appears that the footnote in *Bedonie* is not accurate insofar as the federal statute does not actually define and punish burglary *of a private residence*.  There is no Tenth Circuit case law addressing the issue of whether it is proper to look to

-20-

the state law definition of burglary of a private residence in the context of the federal felony murder statute.  As set forth above, however, the Fourth Circuit, the Sixth Circuit and the District of Arizona all have applied state law definitions of burglary of a private residence in the context of the federal felony murder statute.

Moreover, in *Bedonie* itself, the Court's conclusion was that Congress did not intend "to allow the federal definitions of the predicate crimes for felony-murder to be ignored in favor of definitions supplied by state and local statutes." *Id.* at 788.  The Tenth Circuit never reached the issue of whether it is appropriate to look to state or local statutes if there is no federal definition of the predicate crime.   In fact, the Tenth Circuit implied that its decision did not extend to such circumstances when it addressed the government's argument that §1153(b) required an application of Utah state law for determining whether jurisdiction exists and for the definition of the crime "[i]f no Federal law in force at the time defined and punished the offense of arson where the property involved was a motor vehicle."  *Id.* at 789 n.6.  Section §1153(b) provides, "[a]ny offense referred to in subsection (a) of this section that is not defined and punished by Federal law . . . shall be defined and punished in accordance with the laws of the State in which such offense was committed."  The Tenth Circuit rejected the government's argument on the ground that, because "[a]rson is an offense referred to in subsection (a) of §1153 and is defined and punished by federal law through §81, . . . subsection (b) is inapplicable to the offense of arson and State law need not be referenced."  *Id.* Similarly, the Tenth Circuit explained that the government's suggested construction of §1111(a) was untenable "*when Congress has supplied federal definitions for each of the predicate crimes*."  *Id.* at 789 (emphasis added).   Thus, *Bedonie* provides no authority on the issue of whether it is appropriate to look to state law definitions of crimes when a crime is not defined and punished by

federal statute.  Accordingly, *Bedonie* is not inconsistent with the holdings of other Circuits on this issue.

Further, in *Nichols*, the Tenth Circuit restricted the precedential value of *Bedonie*, holding that the proposition in *Bedonie* that the "any arson" language of §1111 is limited to 18 U.S.C. §81 is dictum.  *See Nichols*, 169 F.3d at 1274.  In *Nichols*, the defendant appealed his conviction and sentence after having been found guilty of conspiring to use a weapon of mass destruction.  The defendant claimed that the district court erred during sentencing when it sentenced him based on the guideline for first degree murder instead of the guideline for arson and property damage by use of explosives.  The Tenth Circuit found that the substantive offense of using an explosive weapon of mass destruction is functionally equivalent to the "arson" listed in §1111(a).  The defendant referred the Tenth Circuit to *Bedonie* for the proposition that the "any arson" language of §1111(a) is limited to the arson described in §81.  Any extension of §1111(a), he argued, would be impermissible in light of *Bedonie*.  The Tenth Circuit explained that, in *Bedonie*, it rejected both the defendants' argument that there could be no felony murder because §81 did not apply to setting fire to motor vehicles and thus was inapposite on the facts and the government's argument that the "any arson" language of §1111(a) did not limit itself to the arson contemplated in §81 but rather that the definitions of predicate crimes could be supplied by state statute.

The *Nichols* Court held that *Bedonie* did not bind it in the case before it.  First, the Tenth Circuit explained, "the proposition upon which Mr. Nichols relies – that the 'any arson' language of 18 U.S.C. §1111(a) is limited to 18 U.S.C. §81 – is dictum.  *Bedonie*'s resolution of the defendants' argument disposed of the case in toto.  Thus, any discussion of proper predicate felonies was superfluous." 169 F.3d at 1275.  Next, the Tenth Circuit stated that "in *Bedonie* we were asked to

-22-

decide only whether a state statute, the Utah statute, could define the predicate arson felony, and not whether federal statutes other than section 81 would suffice." *Id.* at 1275. The Tenth Circuit concluded, "Mr. Nichols' reliance on *Bedonie* is misplaced." *Id.*

Defendant's reliance on *Bedonie* is equally misplaced. First, as set forth in *Nichols*, *Bedonie*'s discussion of "proper predicate felonies" was outside of the Court's holding and thus was no more than dictum. Next, as set forth above, the holding in *Bedonie* was simply that, where there is a federal definition of a predicate offense, the court cannot look beyond that federal definition to state law definitions of the same offense. While there is language in *Bedonie* suggesting that there would be no need to look beyond the federal statute for definitions of predicate offenses because all of those predicate offenses are defined and punishable under a separate section of the federal statute, this language is actually incorrect with regard to the predicate offense of burglary of a private residence. Courts have consistently found it proper to look to state law definitions of burglary of a private residence for purposes of interpreting the federal murder statute. *Bedonie* does not provide any reason to believe that the Tenth Circuit would take a contrary position on this issue. Moreover, *Bedonie* does not address the issue of whether an offense properly can serve as a predicate for felony murder if it is defined in the murder statute itself rather than in a separate provision of the statute. *Bedonie* counsels only that the predicate crime for felony murder be defined by reference to the appropriate federal statute -- it does not direct that the "appropriate federal statute" be separate and apart from the murder statute itself. Finally, there is simply nothing in *Bedonie* to suggest that the issue raised by Defendant herein has constitutional dimensions. Indeed, *Bedonie* itself involved a jurisdictional challenge rather than due process claims.

Neither burglary of a private residence nor child abuse is defined and punished in a separate provision of the federal statute.  Nonetheless, courts consistently have upheld the use of burglary as a predicate offense to murder.  There is no logical distinction to be drawn between the enumeration of burglary and the enumeration of child abuse as a predicate to felony murder.  In fact, child abuse is actually defined in the federal statute within the murder provision itself, while burglary of a private residence is not defined in the federal statute at all.  Accordingly, there is nothing in the case law in this or other Circuits to suggest that child abuse is an improper predicate offense to felony murder.

Defendant's due process argument rests on the initial premise that child abuse is not a proper predicate felony.  Beyond citing to *Bedonie*, Defendant provides no insight into how he reaches this premise.  As set forth above, neither *Bedonie* nor any of the other relevant case law suggests that child abuse is not a proper predicate felony.  While Defendant correctly notes that child abuse is not defined and punished elsewhere in the statute, Defendant fails to explain how this fact is constitutionally significant.  Without more than a simple recitation of the fact that child abuse is not separately defined and punished, the Court cannot find that the murder statute's enumeration of child abuse as a predicate felony implicates due process.[3]

---

[3]  Defendant does not suggest, and the Court does not find, that because child abuse is not separately defined and punished, the murder statute provides insufficient notice to satisfy due process.  In *Bouie v. Columbia*, 378 U.S. 347, the Supreme Court stated, "[t]he basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court."  *Id*. at 350-51.  The Supreme Court further stated:

> The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

*Id*. at 351.  In the instant case, subsection (a) of §1111 states that murder committed in the

## CONCLUSION

Defendant has failed to show that 18 U.S.C. §1111, as amended, violates due process.  First, the fact that the offense of child abuse does not merge into the murder does not implicate any constitutional rights.  In addition, there is no constitutional violation as a result of the fact that the amended statute does not require the government to prove premeditation so long as it proves all of the elements of child abuse and that a death resulted from that child abuse.  Accordingly, Defendant's motion to dismiss must be denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss the Indictment as a Violation of the Defendant's Right to Due Process Under the Fifth Amendment to the United States Constitution **[Doc. No. 24]** is hereby **DENIED**.

Dated this 27th day of October, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Sam Winder

Attorney for Defendant:
Richard Winterbottom

---

perpetration of child abuse is murder in the first degree.  Subsection (c)(3) of §1111 defines child abuse as "intentionally or knowingly causing death or serious bodily injury to a child."  The statute thus provides sufficient notice that the conduct at issue here was prohibited and, accordingly, meets the due process requirement of fair warning.

-25-